199 So. 739

**STATE v. 2147 POUNDS OF PACKING STOCK BUTTER.**

**6 Div. 741.**

Court of Appeals of Alabama.

Dec. 17, 1940.

Rehearing Denied Jan. 14, 1941.

608

Horace C. Wilkinson, Erle Pettus, and Victor Smith, all of Birmingham, for respondent and intervenor.

SIMPSON, Judge.

Petition by the State, on relation of the Attorney General, for mandamus or other remedial writ to be directed to the Hon. J. Russell McElroy, as Judge of the Circuit Court, Tenth Judicial Circuit, commanding the vacation of a certain order (hereafter) entered by said Judge in a cause pending in his Court, wherein the State, through the Department of Agriculture and Industries, is plaintiff and Cloverleaf Butter Company, a corporation, is defendant, by intervention (State v. 2147 Pounds of Packing Stock Butter, Case No. 104634, Jefferson Circuit Court).

The Cloverleaf Butter Company (defendant), with its principal plant and place of business in Birmingham, Alabama, is engaged in the business of manufacturing renovated or process butter from so-called "packing stock butter", which is country butter accumulated from rural sections, assertedly, in Alabama and contiguous States, and brought to the defendant's plant for processing. Renovation of this butter is effectuated by heating and straining it, the use of centrifugal devices, a purifying process, and the addition thereto of other lacteal substances. It is then rechurned and ultimately there is evolved a finished, uniform product, marketable and sold in Alabama and elsewhere.

Thos. S. Lawson, Atty. Gen., and Chas. L. Rowe, Asst. Atty. Gen., for petitioner.

In accordance with duty and law, on July 29, 1939, agents of the Department of Agriculture and Industries inspected containers of this packing stock butter at defendant's said plant. The State contends that said agents found the butter to contain miscellaneous filth and determined it to be an "adulterated" food as that term

is used in the Agricultural Code of Alabama, Section 39, p. 9, Article Seven; and therefore subject, under the law, to seizure and confiscation. Thereupon, and in the manner provided in the Act, the said agents impounded the article, placed it in a proper repository and instituted proceedings in said Court for its condemnation (Code, supra, Article 27). At this time, samples of the butter were taken by the agents, some of which were delivered to the defendant and others sent to the State laboratory for examination.

Subsequently, the defendant having intervened and denied the State's contention, the cause came on for trial before the Hon. J. Russell McElroy, sitting without a jury. The State proceeded to introduce evidence to substantiate its claim for condemnation. At the conclusion of the State's direct evidence, upon motion of the defendant company, the Court entered an order requiring the taking and examination of additional samples of the packing stock butter, by the Commissioner of Agriculture and Industries or his accredited agents. The modus operandi of taking the samples was: (a) a sample from each container in its present stage, (b) a sample after the product has been "thoroughly softened and mixed", (c) "divide said sample with the defendant", (d) renovating the remainder of the seized product by the defendant in the presence of said Commissioner or his representative, awaiting then the further order of the Court.

Presumably, the purpose of this order was to allow technicians for the respective parties to examine this butter in its several respective stages, and give evidence of the analyses to the Court when the hearing shall have been next resumed. Reason and justification for this action appear in the following excerpt from the order of the Court: .

"The Court is of the opinion that the taking of said samples will be of substantial and material value in enabling the Court to ascertain the full truth in reference to the issues in this case, if said samples are examined by experts, and that the taking and examination of the samples will enable the parties to more completely adduce evidence in the form of an examination by the experts who examine the sample, whose testimony will be of material and needed help to the Court in ascertaining the truth. The Court is further of the opinion that a granting of the motion will not place any unreasonable duty on the Commissioner of Agriculture and Industries, and that a compliance with the order hereinafter made will not place on said Commissioner any unreasonable or unduly onerous burden, in view of the importance and necessity of obtaining the fullest light feasible concerning the matters in dispute."

The original petition of the State, in this Court, challenges the propriety of this order. The trial below has not been concluded, but is still pending there, awaiting decision by this Court as to the merits of the State's application for mandamus.

We pretermit discussion of that phase of the State's application seeking to impose upon this Court the duty of trying the case, originally, upon its merits, viz., deciding the question of the subjectability to condemnation, vel non, of the product in suit. Suffice it to say that we know of no procedure which authorizes, in such a case, the ouster of nisi prius jurisdiction and the substitution of an appellate tribunal as a court of original trial. This question is not ripe for determination here until the trial below, upon merits, shall have been concluded, judgment duly rendered, and appeal therefrom properly effected.

So, the controlling question for decision of this Court, as presented by the original application, is the authority and propriety of the action of the trial court in ordering the taking and examination of additional samples of the "packing stock butter."

This Court entertains no doubt that, if, in order to ascertain the truth of the issue, (as was the pronounced purpose thereof, so appearing in the answer of respondent in this Court), and thereby promote justice between the parties, such action was deemed necessary, the trial court was fully warranted in entering such an order. A judicial trial should not be considered as a gladiatorial combat in which the umpire—the judge—views the arena from afar and sits mute in witness of the slaughter. One of the ultimate objects should be to arrive at a correct conclusion in the furtherance of justice.

The Chamberlayne Trial Evidence, 2nd Ed. by Tompkins, in treating of the control and regulation of trials, Chapter II, p. 34, § 51, observes: "To secure substantial justice to the parties is avowedly the object of the procedure under consideration and the motive or object with which the court exercises its wide admin-

istrative powers. In addition to its func- tion of regulating the orderly course of the trial itself, the judge may, in pursuance of these administrative powers, *intervene directly to secure the ends of justice."* (Italics supplied.)

Considerable latitude of discretion is accorded to the nisi prius court in the conduct and regulation of trials. It is within the discretion of the trial court to permit or refuse to allow experiments, demonstrations, or tests to be made and in this case, when obviously the tests, deemed necessary by the Court for proper decision of the issue, could not be carried on in open court there was no impropriety in ordering them accomplished in the manner prescribed in the order. 64 C.J. 87, p. 86; Woodruff Coal & Iron Co. v. Commercial Coal Co., 221 Mich. 175, 190 N.W. 686.

The defendant company has intervened with a cross-petition, praying this Court for an order of dismissal of the proceedings below, and alleging the interstate character of the product involved and its non-subjectability to state law. Prematurity of this application is manifest from the record. This issue, after due taking of proof, is also first subject to consideration by the trial court. Thereafter, review by this Court would be in order. So the cross-petition is subject to the same criticism as has been directed at the State's original petition, wherein it is, in effect, proposed that this Court usurp the jurisdiction of the trial court and here try an original issue of fact. This Court has no such authority. The issue, on the evidence, must be first tried below.

The conclusion results that the original application of the State, as well as that of the intervenor, defendant company, should be denied.

Writs denied.